May it please the court, my name is Stanley Goff, attorney for Appellant Morgan Sanders. The district court erred in holding that the appellant's no contest plea to a charge in the post section 148 was barred, barred his excessive force claim under Hector Humphrey. The court's reasoning for this holding was that because plaintiff stipulated to the fact that he was resisting arrest at the time that Appellant Brian ordered the canine to bite, he now cannot allege excessive force on the grounds that Brian's ordering of the bite was unlawful. However, the district court completely failed to apply its analysis regarding the subsequent use of excessive force, which was the repeated biting of the plaintiff, Brian forcing the plaintiff's leg deeper into the canine's mouth after the plaintiff was no longer resisting and was laying on the ground and took due by the other officer, which was also alleged in the operative complaint. Regarding the subsequent use of excessive force by Brian, we feel that Hooper v. County of San Diego, which was held by this court, directly applies. The heck bar does not apply to the plaintiff's claim, at least regarding the repeated biting of the canine, because his claim was directed at the unfeasible force used to effectuate his arrest once he was laying on the ground to surrender and not have the awful conduct of the appellate to lead him to his physical apprehension. Would you entertain a question? Yes, sure. Okay. I think in my mind, how we're going to handle Hooper and the other cases that we have is that in one lane of cases, the fight was over. A woman was already, already she was not doing anything. Here, if I understand the record correctly, although your two marshals on his shoulders, his legs were still free. They were moving and he was using them to his advantage and was advised that if he didn't stop, the dog would come on. Isn't that different from Hooper? Well, that part is different from Hooper, your honor. However, we're alleging, we also allege in the operative complaint, which the district court never addressed, that after the plaintiff was no longer resisting, was in total surrender and totally subdued, that Brian repeatedly forced the plaintiff's leg into the canine's mouth for the canine to continue to bite the plaintiff. So that part, so in that context, it's just like Hooper, your honor. Does the record show that he was completely submissive, that his leg was down without anybody holding him down and that he was not struggling at the time the dog bit him? Well, the operative complaint alleges two forms of excessive force. One was at the time that he, the canine was deployed. The other one was after he was already in full surrender, a repeated bite by the canine. That part, that portion of the force that we allege in the operative complaint was never addressed by the district court in the total. And that's what we're, that's what we're bringing up now. The district court completely failed to address that subsequent use of excessive force. And even in the district court's reasoning, they speak about, or they only speak to the initial bite by the appellee regarding Brian ordering the bite of the plaintiff. I mean, excuse me, of the appellee, your honor. But not the subsequent repeated biting that we allege in the operative complaint. So, Mr. Goff, it seems that one of the critical issues here is the factual basis for your client's plea and then conviction for the 148. What is the, what was the factual basis for the plea? How should we determine that? And then how do we know it didn't include, did or did not include subsequent bites? Rest, we can continue to start as a subsequent bite. Well, your honor, your honor, the record is clear that, and we concede this, that the appellant did, he stipulated to everything that was presented at the preliminary hearing. We don't contest that. We only go on by the record, which was that when the district court issued this ruling, the judge simply stated or, or, or, or presented that she, she was now doing analysis regarding the deployment of the canine to bite the appellant. She did not address or speak about the other allegations that were made in the operative complaint, which was the repeated biting of the canine of the plaintiff's leg. With the officer, based on our allegations, forcing the appellant's leg into the dog's mouth deeper for the dog to get a deeper bite into his leg. That was never addressed. What did officer Bryan say about the dog bite in his testimony at the preliminary hearing? He said that, he said that the appellant was kicking his legs around and that he ordered the dog to bite the appellant's leg until he was handcuffed. He said that once the appellant was handcuffed, he ordered the dog to stop biting. We're alleging that that's not what happened. We're alleging that after the plaintiff was already handcuffed, already subdued, that he allowed for this canine to continue to bite the plaintiff's leg, which was in the operative complaint. But you just said that you were stipulating that the factual basis was everything that was said at the preliminary hearing. So how do we reconcile, you agreed to what they said at the preliminary hearing, but alleged something different happened? So we contend this, your honor, that even if this court ruled that Mr. Sanders was barred or head barred from bringing his successive post claim all the way up to the fact, all the way up to the point of the dog being deployed, and even maybe after the first 10 seconds of the dog biting, that's fine. However, subsequently, which is possible under Hooper, subsequently, Brian allowed for the dog to continue to bite the appellant after he was already subdued. When did we decide he was subdued? Because you're saying Officer Brian said, I called the dog out after he was handcuffed. You're saying sometime between the time he the first bite and handcuffing, he was subdued? Or something else happened? No, your honor, I'm saying that after he was subdued, meaning he was handcuffed, meaning he was handcuffed, meaning he was already in detention, meaning he was no longer posing a threat, the dog continued to bite the appellant. Okay, that's helpful. So your allegation is that the dog bit him after he was handcuffed? Yes, your honor. Okay. Wait, is that correct? I was reading your complaint. It suggests that there's only one dog bite, right? No. Well, excuse me, your honor. The complaint is not fully clear to the court, and I apologize for that for not making it more clear. The dog was deployed to bite the appellant. However, we're also alleging that after the dog was already on the ground, the dog had already bitten him already. He's already subdued, he's already detained fully, that Brian allowed for the dog to continue to bite the appellant, even forcing the appellant's leg deeper into the dog's mouth. But are you suggesting that there was two dog bites or just one continuous dog bite? I was, you know, your honor, I don't know. We didn't allege there was two dog bites. We just allege that it was force used, and that's, we could say the duration of the force turned into excessive. Or we could say that the manner in which the force was used, first it was lawful, and then it evolved to being unlawful because now the appellant is no longer resisting. He's totally subdued, and the canine is allowed to continue to bite the appellant even after he's in this position. So at some point you want us to separate the dog bite. I guess you're alleging that at some point the dog bite went from lawful to excessive. That's, that's, that's, I could, I could concede that. Yes, your honor. Yes. And how are we supposed to know when that change happened? I don't know if I see it in your complaint. Well, we, I try to make it as clear as possible in the complaint. However, I take responsibility if it's not that clear, and that's the other part of this argument. That at this stage of the plea, which was a 12-P motion, your honor, the judge could have allowed for us to have leave to amend to, uh, to make those facts more clear. The facts were there. She could grant us leave to amend, and we could have amended it and made it even more clear for her, for the court to see that we were speaking about, in addition to the deployment of the dog bite, because we didn't make that argument as well, but we also made the argument that it was subsequent repeated by the dog after the claim was already subdued. That was also excessive. So, Mr. Goff, unless the other judges have more questions, you have about a minute left. Did you want to reserve your time? Yes, your honor. I'd like to reserve my time. Okay. Um, and let's see. We have Mr. Blackman and Mr. Allen. Mr. Blackman, you are going to take eight minutes. Mr. Allen's going to take two. Mr. Blackman, were you going to go first? Yes, your honor. Okay, please proceed. Thank you. May it please the court. My name is Noah Blackman. I am counsel for the appellees in this case, the city of Pittsburgh and the canine officer, officer Brian. Judge Kim of the district court got it right. This is a clear cut case where heck bars this excessive, uh, these excessive force allegations. The court should affirm the dismissal. If the court, this court would allow Mr. Goff and his client to argue that this canine bite was excessive force that would clearly undermine. In fact, it would be a collateral attack to the underlying penal code section 148 conviction. And it wouldn't validate that conviction. Uh, judge Wallace is correct that the record, uh, of the preliminary hearing essentially is what forms the factual basis for the plea. That's what controls. The fight was not over, uh, so to speak, like judge Wallace said until after the canine was deployed and the dog was on the bike for a period of time until he was in handcuffs. That's the undisputed testimony in the record. Uh, that's the testimony that Mr. Sanders, uh, accepted and stipulated to as part of his plea. So Mr. Blackman would, you would agree that, um, even with a conviction under section 148 for resisting arrest, um, there could be a point when the officers were acting lawfully, but then a point when they're using excessive force. And if they're using excessive force, um, that is not lawful. And that would be outside of the given that at some point there could have been excessive force, and that would not be head card. How do we decide if that happens? How do we, uh, view this event in segments or as a continuity or as one event? And how do we view this to decide at what point was there excessive force, or at least is there an allegation? Your honor, we do not find potential excessive force subsequent to the behavior that formed the basis of a resisting arrest charge, but we don't have that here because we do have a very clear record. Uh, if the court looks at the critical pages of the supplemental excerpts of record, we had to do all the supplemental excerpts because the record was unclear by what Mr. Goff provided, but there's critical pages. SER 148 to 150, uh, 169, as well as 174 to 176. And more critical to your honor's question, even during cross-examination at the preliminary hearing, and I'm at SER 169, the criminal defense attorney was going into the lawfulness of the canine bite and in cross-examination and asked the officer, you know, when did the bite stop essentially? And the answer was it was on the bite for the exact amount of time it took to place Mr. Sanders in handcuffs. He estimated 20 to 30 seconds, but obviously there was a body camera that was going to control, um, as well. Um, so the point is that based upon the record, officer Brian, as well as the Antioch officers acted lawfully. That's what the plea basically acknowledged throughout the entirety. So he was acting lawfully at the time he deployed the canine. And at the time, basically Mr. Sanders was eventually placed in handcuffs. So you said there was a body camera. Is there, is there a footage from that camera that shows the event and can tell us what happened? Uh, that was part of criminal record. That's not part of the record here on appeal. Uh, but that was part of the criminal record that, uh, was played that criminal defense attorney had a chance to cross examine. Okay. But it was, was it before the district court in this case? Uh, I'm not sure. Uh, offhand, actually, I don't believe it was, I don't believe it was part of that. Uh, your honor, uh, the plaintiff is now trying to basically manufacture and dissect this factual record. But what's important that is that in the criminal case, that's the time when Mr. Sanders needed to try to qualify or limit his plea. He never did that in the plea. He basically accepted the entire preliminary transcript and the record, which for the purposes of this appeal relates to officer Brian's testimony about resistance the entire time, even through the up until the time he's handcuffed. Mr. Goff is not allowed to now slice and dice the record and change the record by arguing that after he was handcuffed, which is certainly not in the complaint that he was bit once or twice. Hypothetically, even assuming that that was the record at the of penal code section 148, if the officer was acting unlawful during that. So basically his plea acts as a acceptance that officer Brian and the Antioch officers were acting lawful throughout the entire event. So to agree with you, we have to accept, um, your characterization of factual basis for the plea. Um, and I think it's beyond dispute that the discussion of the factual basis was not very detailed or lengthy. The court asked, um, Mr. Sanders, uh, counsel, if there was a factual basis for the plea. And I believe it's stated based on the preliminary hearing transcript. That's the extent of it. There's no detail. There's no, you know, nothing else, but somewhere in that transcript, there's a factual basis for the plea. So you're saying we should interpret that as everything in the transcript, as opposed to the parts of the transcript, um, that, uh, could be separated from parts where there's an allegation of excessive. Is that correct? Is that a fair summary? That's, that's fair, Your Honor. But there's no, there's nowhere in the preliminary hearing transcript. And we're really talking about officer Brian's testimony. He was the only witness on, on that point. The other witnesses related to other crimes. There's nothing in the preliminary hearing transcript that indicates any excessive force or any use of the dog after the handcuffs. So what's, what's important from the, from the transcript is what is how it shows resisting, uh, arrest. So he was fleeing in a vehicle. They tried to stop him. He didn't stop. That's resisting. Uh, he fled on foot. That's resisting. And then he was in a scuffle with the officers and was charged with resisting there as seemed to be multiple ways, um, that he could have been convicted for resisting that could be separate from any excessive force. So how do we, how do we slice up this transcript or do we need to decide that this transcript covers everything? I appreciate that judge Beatty, you know, you can't slice it up because basically when, when the plea was accepted based upon that transcript, the plaintiff has accepted that he was resisting arrest at the time the dog was deployed. And at the time, all the way up and through handcuffing, he could not now get up and argue against that. His opportunity, which he did not take, uh, at the criminal trial was to try to, at the time of the plea to limit his plea to like your honor said fleeing in the car or fleeing on foot. They never took that opportunity. This was raised specifically in the Winder case, which I Eastern district. The court said that there was no exception or reservation by the criminal defendant regarding the preliminary hearing. So all the officer's behavior was lawful. Winder did not limit the agreement to only portions of the transcript provide a separate factual basis or in any other manner suggests the trial judge should not rely upon a particular portion of the transcript in finding a factual basis. The same thing happened in Beats, which the jury basically determined. Mr. Blackman, we're, we're, we're well aware of those cases. So reading them to us doesn't, isn't helpful. Plus you're into your co-counsel's time. Did you want to allow Mr. Allen some time? Yes, that's fine. Thank you. I've submitted. Thank you.  Thank you, your honors. May it please the court, Kevin Allen on behalf of Pelley's and Young officers, Hulleman and Hopwood. I agree with Mr. Blackman said, I add only this, the only allegations against my clients were an integral participation claim and a failure to intervene claim on the excessive force. If there is no excessive force claim, it's barred by heck. Therefore, there is no grounds to sue the clients and they should be dismissed on those grounds as well. That's it. All right. Thank you. All right. Mr. Blackman, there's 20, 20 seconds. I've got actually the clock is reset. So, um, Mr. Goff, you've only got a minute, but we took up some of your time of questions. So I'll give you the two minutes you asked for. Thank you, your honor. I appreciate that. So just to address, uh, web and make man, those two cases are distinguishable. Uh, first and foremost, they're not binding on the court. They weren't, and they were not, they're definitely not buying on this court. However, they're distinguishable because in both of those cases, the plan is alleged in their complaints and in their declarations that they did not resist or engage in any resistance, which would on your opening. Uh, it's a little different than what you raised in your brief, isn't it? Because as I understand your argument of briefing is that it was the flea and the foot chase and the car chase that could have been the basis of the resisting arrest. Not this argument that you're making now that the dog bite, uh, somehow transformed from reasonable to excessive at some point. Do you agree with that? Well, I respectfully disagree. We were making both of these arguments are being made and I was going to address the second argument, which is what, uh, judge, uh, baby, uh, presented, which was that there are, are, are the record is very unclear as to what part that my client resisted. He resisted on at least three different occasions and the record, the record in which he played bookie to does not specify which one of those that he could have played guilty to a 148 war. So if he, um, if he were charged, if there were going to be another resisting charge, wouldn't he claim that his plea covered everything that happened in the incident? So in other words, he would get the benefit of all of the claims, potential resisting claims being extinguished by his claim. Do you agree with that? Yes, I agree with that. You're on it. That's typical, uh, uh, uh, exercise in the criminal court. However, for purposes of a lawsuit and it has been cases in the ninth circuit that have addressed this, it's not clear as to what part or what actions that my client engaged in that he, uh, pled guilty to section 148 for it was at least three incidents. And this is aligned with, uh, Smith, uh, uh, Smith being Hammond. Uh, it's not clear. And for the court now or for the district to use the incident in which the client was on the ground, uh, and the canine was deployed, uh, and say that that was the part that could be used as a cherry picking or slicing and dicing. It's not us. Okay. So we're over time now. Um, unless my colleagues have any additional questions, we'll submit the case and counsel. Thank you all for your argument this morning. Thank you. Thank you all. Your honors.
judges: Wallace, Bade, Bumatay